and we'll hear from Mr. Gild. Thank you, Your Honor. May it please the court. My name is John Gild and I represent the appellants, the Rideaus, who are the parents of Little T. I also represent Plains Capital Bank, the guardian over a grave injustice. Keller ISD knowingly allowed a special education teacher to severely abuse Little T, a disabled child, who was unable to report his abuse. Can we affirm the district court, is your case over? I mean, would you not be able to refile as Plains Capital on behalf of? Your Honor, we have filed a second case, Plains Capital as the guardian of Little T's estate. Keller ISD has taken the certain claims would nonetheless be barred. Their position, particularly as it relates to standing, is that claims that were, that medical expenses that were reimbursed by the trust, were somehow converted into claims that actually belong to the trust itself. That they were never Little T's claims as a result of that reimbursement. Now, our position is that that obviously conflicts with the collateral source rule. The trust is a separate identifiable entity, and that is not the law. However, Keller ISD disagrees with that position, has taken the view that all medical expenses will be barred. Okay, well, while we're on the subject of medical expenses, maybe you can address the question that you all were asked to be prepared on. The district court mentioned it in one sentence, but the Texas law is very clear that medical expenses of a minor, the cause of action for that belongs to the parents. And why isn't that a principle that should be addressed here? Your Honor, that is correct. Under Texas law, under Texas tort law, a negligence action that results in the injury to a minor that requires medical expenses, those medical expenses, the injury from those medical expenses, is a claim that belongs to the parents. And the reason for that is the parents are the only people who have capacity to contract with a health care provider to agree to receive medical treatment. They're the ones who consent. And so, therefore, when a health care provider provides treatment to a minor or an incapacitated adult, they actually turn to the person who has authority to consent to medical treatment. Were there medical expenses here? There were medical expenses. Future medical expenses were several hundred thousand dollars. Past medical expenses were less, less than. In connection with this, this entry? That's correct, Your Honor. Yeah, but the Texas rule is actually grounded in something a little bit different. It's grounded in the fact that parents are responsible for their kids' medical expenses until the kid turns 18. And, therefore, the kid doesn't own the cause of action, the parents do. It doesn't have anything to do with who contracts. It has to do with the parents are legally responsible for their children's medical expenses. And that's why they're the ones who bring the claim, regardless of who paid, because it's their claim. Now, why didn't you make that argument? Your Honor, that is correct as a principle of would apply to the Americans with Disabilities Act or the Rehabilitation Act, because those are federal claims. And so, federal law would govern who owns a claim under those acts. I do believe that the Texas law on the issue is incredibly informative, however, because it does lay bare the fact that parents, and in this case, the Rideaux's, were always responsible for obtaining medical care for little t, for consenting to that medical care, for deciding who provided medical care. And if a caregiver was not paid, that caregiver could not sue the trust or the guardian. They would have to sue the Rideaux's. You want to proceed with your argument? Yes, Your Honor. Well, isn't that part of your argument or no? Yes. Yes, absolutely, Your Honor. Now, as to why the district court's judgment must be reversed, we've addressed several issues in our briefing. I'd like to address two at argument. First, little t's parents, the Rideaux's, have standing and capacity to sue for injuries to little t, because they are his legal caretakers, as Judge Haynes noted. But even if the Rideaux's lacked authority to sue on behalf of little t, the district court erred by failing to allow Plains Capital Bank to substitute or ratify under Rule 17-A-3. Rule 17-A-3 is designed specifically to prevent the injustice that occurred here by requiring courts to allow substitution or ratification. Tell me, um, how this transpired that the parents ultimately sued when, as I understand it, they initially went to the trustee for and who applied and got guardianship with the approval of the parents to bring this action. And then it winds up that the parents themselves. How did that happen? And for what reason? Your Honor, the parents did request the appointment of a guardian. Their expectation was that they would still be bringing suit. The belief was that it was necessary to protect Plains Capital in regards to the expense that might be incurred throughout the litigation. And so that was that was the concern to be addressed. They never contemplate. To the child or to the parents to bring it in their name instead of allowing the trustee to sue in the trust name. Well, Your Honor, I don't believe the trustee would actually have standing to bring a suit. The decisions to to reimburse medical expenses in its discretion pursuant to the terms of the trust. But the trustee, just as a trustee of other words, even though the the the state court authorized him to bring this and prosecute this action, you think that was beyond the power of the trustee to do it, notwithstanding the court order? Your Honor, and I think it's important to distinguish two concepts, the guardianship versus the trust, because those are two legally distinct issues. The trust itself and the Plains Capital Bank's status as a trustee really has no bearing whatsoever on standing. It's simply a collateral source, just like an insurance company or any other person that chooses to provide reimbursement for medical expenses. But under Keller ISD's theory involving a trust, you know, if a parent provided reimbursement, if a health insurance provider provided reimbursement, all of them would need to be parties to the suit for there to be standing. Now the guardianship . . . You didn't join the trustee in the action at least, to let him at least in name be there with the parents? What . . . I mean, obviously the district court thought there was some manipulation going on here and there were certain advantages in your favor in the prosecution of this case to omit the trustee. How do you respond to that? You said there was no motive of any kind of that sort involved? No, Your Honor. There was no motive in it. And, you know, it's completely illogical to think there would be that motivation. If that were the case, the Rideau's simply wouldn't have asked for a guardianship to be created, because it's undoubtable that they could have sued on Little T's behalf. I don't think anyone, even Keller ISD, would take the position they couldn't sue on Keller. Then why did they ask for a specific purpose of his prosecuting this case? Your Honor, and I'll note that we are somewhat hamstrung in that the attorney who was responsible for that part of the case is unavailable to provide her reasoning. She left the firm immediately prior to the filing of the lawsuit. But our understanding is that the only reason was to allow Plains Capital kind of a belt and suspenders protection. You're representing to us that there was no strategic reason of involved in the parents prosecuting it and omitting the trust. Absolutely not, Your Honor. There's no strategic advantage at all in this. And, you know, logically . . . What is the reason? What is the reason? Your Honor, as I explained, the purpose of going to the probate court was essentially to get . . . What is the reason that you brought it instead of him? What is the reason for that? Your Honor, the Rideau's . . . That's all I'm trying to answer. The Rideau's have always been legally responsible for the care of Little T. And their expectation was at all times they would be the individuals protecting his interests. They have for their entire lives. For his entire life. So you're saying you understood the guardianship differently than the district court understood it? Yes, Your Honor. We don't . . . Our position is the guardianship didn't divest the Rideau's of their authority as Little T's caretakers to bring the suit on his behalf. Now, it isn't clear to me and I don't believe that they ever specifically contemplated the issue of the Rideau's versus Plains Capital Bank in bringing the suit. The expectation was they had a relationship and that they were going to bring the suit. Obviously, if there were some desire to specifically avoid the bank being a party, they simply wouldn't have asked for the suit. My understanding is the whole reason for this predicament is because this issue of the guardianship wasn't revealed in discovery until a few weeks before trial. The defense gets it. They ask for continuance. The trial court says, no, let's go ahead. And then it wasn't until after the trial that everyone really looked at this and figured out what was going on because it had been produced so late. So what's the reason that the documents that revealed this were produced on the eve of trial? Well, Your Honor, and I think it's important to clarify what the nature of the documents that were produced prior to trial. There were about a thousand documents, although it's not clear that all of them were not produced. Even Keller ISD hasn't said that all those documents were not produced. It simply was unclear as to which documents had been produced and which weren't. In preparation for trial, trial counsel was preparing documents, medical records affidavits, to prove up their documents. In that process, they got those immediately before trial and tried supplementing with that. There were some additional documents. For the most part, those documents have nothing to do with the guardianship. They're just simple medical records that Keller ISD always had access to throughout the trial. Did the defense have any reason before that final production to know that there was this guardianship issue? Because it seems to me, if they knew earlier, capacity, it's not like subject matter jurisdiction. So, you know, it's typically not dealt with after trial. I would think it'd be waived if it weren't, unless there's this excuse because they only found out about it a couple of weeks before trial. Your Honor, we don't know exactly when they learned about the guardianship. It isn't clear from the documents exactly what they knew about the guardianship. It was a public record at all times. They were aware there had been prior records. Okay, but the question is why you all were not more forthcoming about it. It seems like in the issue that Judge Jolly raised about the court thinking this was strategic and that y'all are trying to hide it, it seems like that factored into the judge's decision. So, a lot of things are public records and nobody has any reason to go look for them. So why didn't y'all just disclose this from the outset? Your Honor, my understanding is that they simply didn't view it as relevant or consider the issue as significant to the litigation. They certainly, there were no specific discovery requests asking about, you know, the appointment of a trustee or a guardian. They were, of course, aware that there had been prior litigation that resulted in a settlement that provided for Little T's care. So they were aware of all that. They just, they didn't ask. Well, you know, then that leads on into the ratification issue of the basis that ratification was denied is that your failure to bring the case in the trustee's name was not a forgivable mistake. And I guess you are admitting that because you are acknowledging that it was intentional with full knowledge of the trustee's capacity to sue that you chose for whatever reasons to go alone. So it was not a mistake. It was, it's not something that, is that, does that have an effect? No, Your Honor, that really is not correct in terms of our position. We were, of course, part of the guardianship. But the very limited exception under Rule 17A3, which by its own terms doesn't provide any exception, it's a judicially acknowledged one in the circuit, of course, is that the standard is not whether or not you knew facts which, with investigation, would have led you to the correct legal conclusion that you lack capacity. And this Court, for example, specifically addressed that issue with regards to a pre-petition claim. But is it a forgivable professional mistake? That's, in other words, if you made a, if you made a professional mistake, it was an intentional professional mistake, and is that satisfactory to allow ratification of the bank at this late time? Your Honor, if the, if the standard were that a incorrect legal conclusion as to your authority necessarily made it an ineligible under Rule 17A3, that would effectively read out the entire section, exception for Rule 17A3. The exception is actually, you know, it would swallow the rule entirely, a rule that doesn't actually expressly provide any exception. So you're saying the forgivable mistake is is not realizing the import of the guardianship? Yeah, so for example, in this this Court held when addressing, it's the only court opinion of this Court addressing Rule 17 on this issue, that a pre-petition bankruptcy debtors who sued lacked, lacked capacity, obviously knew the facts that they, it was a pre-petition claim, and that there was a trustee. And this Court had decades of authority, decades of authority, expressly stating that they, that a pre-petition debtor doesn't have capacity to bring that claim. And yet this Court expressed skepticism that that could not be a understandable mistake under the rule, and reversed and remanded to the District Court. We're going to give you another minute, because you've taken up a good bit of your time here, to say anything that you may have been prevented from saying by the time. Yes, Your Honor, and one thing I would like to note is, as to the issue of capacity, it is abundantly clear that Keller ISD actually wasn't, is, and isn't concerned about capacity. Their brief asserts one basis for depriving the Rideau's of capacity, is that they're, they're asserting their, their rights as parents that he turned 18 before trial. And they say that, that, that negates any capacity that they might have had. But Keller ISD knew, before this lawsuit was filed, they always known how old Little T was. They know he turned 18 before trial. They chose not to assert it, because they didn't care. They didn't care about how they lost at trial. This is, this is an issue that is largely ginned up expressly to avoid the result at trial. It was, was not something that Keller ISD was concerned about prior to that. And that, and that's the reason why we're here. Did you need to be remanded for the District Court to reconsider its decision? Did you make these arguments to it, that you're making now? Your Honor, as to the, the capacity issue of turning 18, I don't believe Keller ISD noted that they were, that the lack of capacity based on age 18 until their appellee's brief. That's the first time they admitted that this was something that they anticipated or could have anticipated before trial and chose not to assert. But you don't think we need to remand it to let the District Court further hash it out? No, Your Honor. And on that particular point, we believe that, you know, that all that does is illustrate the, the reason why the capacity is not really an issue. And to the extent that it is an issue, ratification was the appropriate result to unmute the issue. Okay. Thank you, Mr. Gill. Mr. Brandt, we'll hear from you. May it please the Court, Tom Brandt for Keller ISD. The District Court should be affirmed in both counts, the first count being that the, the authority was not there for the Rideau's to bring these claims. And secondly, that the ratification was properly denied. Judge Means did not abuse his discretion on that. I would like to deviate a little from my prepared remarks to address the issue of discovery. The statement you heard was that there was no discovery request. That's false. There were discovery requests and we have in the record asking specifically about the trust, underlying trust documents. We were told they do not exist. Also, it is a standard disclosure requirement in the Northern District to disclose the existence of anyone who has an interest in the litigation. The bank was concealed from Keller ISD for three and a half years. It was only. What is the motive for that? In other words, why were they trying to conceal this fact? How did that work in their favor? It worked in their favor in a very specific way. Because if we had known about the, in a number of ways, but in, in one particular way it was very important. Because if we had known that the bank existed as the guardian of the estate, then we could, then they would have been required to be a party and then they also would have been required to answer discovery. They did answer discovery after the trial because we had depositions after the trial and we took the depositions of the bank. And by the way, when we were asking the questions that you were asking Judge Jolly, why didn't you name, why didn't you bring the bank in? What we got was an invocation of attorney-client privilege, a complete avoidance of the answer. But had we been able to go and get the bank involved, not only would we have known fully about the relationships, we also would have been able to go after the bank to get the answer. Which would have given us information to proceed through discovery, depositions, questioning of the expert. It had all of the documents that had to do with what TR's injuries were, what had caused them, what his prognosis was for the future, and also who was responsible, directly responsible for paying for all that. That was the original trust. That trust is not a collateral source. It's not like insurance. It is a direct source, judicially appointed to provide the care for his life. Future medical care, future caregiver. How does that relate to this particular injury? It does. It doesn't satisfy me of showing a motive that would have induced them to have concealed this. What kind of motive did it work in their distinct favor? Yes, well for one thing. That they would take this action. And I'll just borrow from Judge Means' opinion about that. He recognized that the Rodeaux's were a much more sympathetic plaintiff than the bank. Okay, and I have a problem with that. Because it seems to me to be completely improper for you to try to defeat Little T's claim by saying, well, he's got this big trust behind him. He's kind of rich anyway, so it doesn't matter whether our teacher molested him or whatever. Don't look at these sympathetic parents. No, no, that's not what I'm saying. Neither side should have been using sympathy in this case. And so to me, the fact that you have a less sympathetic, you're going to sit there and put the bank all over this young man, strikes me as completely improper and should have been eliminated out even if the plaintiff's capital was who brought the case. What we had to, the important part that I was trying to get at was what we had to do with talking and deposing their expert, right? They had a life care expert. They concealed the original life care plan that existed in the original lawsuit against the vaccine manufacturer. Now we didn't have a life care plan, which they claimed didn't exist. They claimed all those documents didn't exist. We found out that they did. We would have had that available to us to focus on the difference, focus on the damages model, which was the difference between the damages caused by the vaccine and whatever damages were going to be caused in addition to that by whatever killerized e-grid. The jury undoubtedly knew what his pre-existing condition was. I mean, that's why he's in this special class and why he's with this teacher who abuses him. It seems like these are just discovery violations related to damages. It doesn't really go to the guardianship issue. But why are you saying the trust, because it was there to pay his expenses? I mean, if he had additional injuries, which is what the jury here necessarily found, that depletes the trust from what it would have otherwise been. So, I mean, it seems there's clearly an injury here. And Your Honor, with respect to the merits of the case, I mean, honestly, we're here not talking about the merits of the case. This is... But you said because there's this trust, essentially there's no injury, but... I was trying to answer the question about why do I think, I mean, I'm asked to speculate as to the reasons why opposing counsel concealed information from me and then have to explain why that harmed me. It seems like the world is upside down because... But you said, as I understood what you were saying, is that you were saying that the damages they're seeking here are redundant, the damages that they have already received. Yes, and I... And we would have been able to show that through the records, and I don't know whether that's true or not, but that's what... That's exactly what we would have been able to prove because we did take Linda Metcalf's deposition. She was the trustee with the bank who said, who committed in the deposition after trial, that, yes, we knew we were obligated to pay for little T's care, home care, for the rest of his life. So then we could have used that as a credit of sorts and say, okay, then we find out what is the difference that we have. But the point of that... Let me ask you this, Mr. Brandt, because it seems like your main beef is that they didn't disclose this sooner or they hid this information about the trust, which is a separate issue from guardianship. The trust would not have created the standing issue at all. But anyway, they hid that. That sounds like a discovery violation, which yields discovery sanctions. This is essentially a death penalty sanction, and I haven't seen any findings in the record that would support a death penalty sanction. So explain to me how this can be... You've taken a discovery violation, which is what you're articulating, and turning it to a decision on standing. Why shouldn't Judge Means have to, if he's going to make a discovery sanction, have to go through the rule about discovery sanctions and a lesser sanction wouldn't have been adequate and all of that stuff, and then we review that as a sanction? Your Honor, let me go through how we discovered this. A week before trial, we get a thousand documents dumped on us that are new. We have to figure out which ones are new and which number are new. For the first time, we see these documents about a bank. We object. We move to continue. It's denied. We move to exclude. After the trial is over, we start finding out there's this bank. What's the relationship? Then we get information from the other side on the attorney's fees request saying that they had a contract with the bank as guardian. That's for the first time. After trial, when we find out that there's a guardian of the estate, and then we find out and we find the document, we go to the records and we find the document that says, Plains Capital Bank, guardian of the estate, is authorized to file and prosecute the claims, and the filing of such action is ratified concerning the injuries of Terrence Carl Rideau II Ward, and to assert claims against those responsible for injuries and resulting alleged damages. That's when we find out that this exists. That's the first time we know that we have just gone through a trial that was, that for whatever reason, and I can't crawl into their mind and find out why they're doing what they're doing, but it was concealed from us. I mean, that's a discovery violation.  Because you said that you had some... No, no, no. It was not. We discovered that order, it's 69-67 in the record. That order, we discovered on our own after we got some clues that were given to us a week before the trial. Those clues, unexplained, but we had to parse through them and see that there was a bank, documents from a bank, paying expenses, paying medical bills. Then after the trial was over, we started going through them a little bit more, and we immediately alerted the court and said, Judge, there's something wrong here, and we think we should reopen discovery, delay the entry of judgment, reopen discovery, and find out what the nature of this is. He said, yes, I'll do that. And this is the judge who sat through the whole trial and listened to all of the evidence, so he knows what the evidence was important and what concealed evidence was also important in the case. And I think that he did not abuse his discretion to allow us to do that discovery. We then find out that there is this order, and we ask them, what was the understandable mistake? And that's the same thing that Judge Means asked. And he said, there was never any statement by the plaintiffs that there was a mistake. He said, you have given me nothing to work with. You're not saying that, oh, well, there's a reasonable mistake. You're hearing it now. They're saying, well, there's a reasonable intentional mistake. But he then looked at it and said, well, it looks like that there has been a tactical decision here, and he found that throughout the process, not only trial, but also we had an effort to try to settle this case early on, and we should have had at the table people who were responsible and involved, such as the bank. We went through mediation. We went through settlement conferences. Bank was never there. They were never disclosed to us, so we didn't have an opportunity to have a fair avoidance of a trial by dealing with someone who had a professional detached view of the situation and could have dealt with this on a businesslike manner. We were not given, in that sense, a fair trial because we were ambushed. The problem that I see here is that your main beef is with a discovery violation, and to me, that should be handled as a discovery sanction, and that's not what happened. But there are discovery violations, and there are discovery violations. Some are far more prejudicial than the other, and that's your argument. But this wasn't handled as a discovery violation leading to a discovery sanction. I mean, I don't see any of the findings that you traditionally see in that realm. That would be a different level of review and a different analysis, and we would be looking at that. But here, you're kind of taking this harm over here and sort of visiting it on this young man who didn't cause it by taking away his jury verdict that he got fair and square. So that seems to be very disconnected from the policy of discovery sanctions. No, we don't think it was a fair trial, and had it gone to judgment against us, of course we would have argued the merits of that. But you have to remember, you're right. It wasn't a discovery motion. I didn't file a motion for sanctions. No one did. It was the plaintiff's motion. They were the ones who motioned to ratify. So they took the affirmative step to say, we want you to ratify. That invoked Rule 17A.3. But that's... That was when there was no reasonable mistake. But you had said that, after you had said that, they lacked the capacity and all of that. I mean, they didn't just come up with that out of the blue. Right. Yeah. They said, okay, we... Seven months after we raised the issue, seven months after we raised the issue, we objected to their authority, then they filed a motion to ratify. That motion to ratify invoked the district court's jurisdiction to look into the Rule 17 issue. And they were going to say, was there a reasonable mistake? The judge says, you've never told me there was a reasonable mistake. You've never given me a reason why you did this, which leads me to believe that it was strategic, attackable. Why wouldn't the right remedy be to grant a new trial and allow this to proceed with the bank involved as guardian? It's happening right now in Fort Worth. There's a separate lawsuit. But you're saying they've lost under limitations. So then that's a... That has not been ruled on. That case was agreed to be the state. That's your position. So you're trying to win kind of both ways. Well, if their argument is going to be that he is an incapacitated minor and the statute of limitations doesn't run against him in Texas law, that will be the legal argument that they make. If they survive, they survive. If they don't, they don't. But the issue with regard to Rule 17A.3 had two things. One, was there a reasonable mistake? And two, were the decisions of the district court who sat through the whole case, heard all the evidence, dealt with the procedural and substantive discovery issues, did he abuse his discretion? He did articulate his reasonings. He didn't just willy-nilly say, okay, we're going to take away this jury verdict. He said, this is not something that I'm going to ratify. I don't think it was fair. Now, if the... I want to ask you about the redundancy of the damages. It's clear that his earlier injury, there is a life plan. There is an award that sets out to provide for him for life, as I understand it. Yes. All right. Now, did the jury here, were they asked to do the same thing to provide a life compensation to account for the injuries that he received on the second occasion? Yes. So are you saying that those are redundant? And I'm going to ask him about that, too, because if they're not redundant... I believe they are. And I think there's an important point to remember here that in the trial, this was a very strange trial where we do depositions after the verdict, and we also did a deposition in the middle of the trial. Okay? And the reason we did a deposition in the middle of the trial, we took a break, was because the plaintiffs had not disclosed to us an updated report from their expert. And I said, you've never given us a report? And so we tried to move to strike. And the judge says, no, I will let you take the deposition. That expert that they put in front of the jury to testify about the future life care was never, ever given the original life care plan from the original vaccine trust litigation. So then that particular expert could get up there and opine wonderfully about the need for little T's future care, never once addressing what the underlying problems were. Did you not know that this young man had underlying problems before he ever got to Keller ISD? Of course we did. Did you not know that that was allegedly caused by a vaccine? Yes, and we asked for that specifically in discovery. That's a discovery violation if they didn't give you everything. I'm back to that. Okay, but we're under a Rule 17 rubric where we're looking at this from what did the judge have in front of him? He had in front of him a motion from the plaintiffs under Rule 17. The issue under Rule 17 is was there prejudice from this being brought in the parent's name when it should have been brought in the guardian's name? It's not would this have affected damages because all these documents related to damages weren't produced. To me, that is a separate issue. Well, and with regard to prejudice, I think we've demonstrated, even if you don't agree with every one of the issues that we've brought forth about prejudice, one of them very easily was that we didn't have an opportunity to settle the case reasonably. Dealing with a bank who we would have known had a fiduciary responsibility not to make this case about a cause celeb to get cameras in the classroom, but would have said this is about settling this case in the best way, in the best interest of the trust. How do you distinguish the Weyberg case that opposing counsel mentioned, which had even stronger evidence that the plaintiffs knew they were suing in the wrong name? I think the bankruptcy court actually told them you need to bring this in the name of the estate. They still went ahead on their own name. How do you get around that? Judge Jolly wrote that opinion, and in that opinion, as I believe, the district court did not address any of the factors, and that's why it was remanded back. It said that was the agreement between the debtor, the bankruptcy trustee, and the debtor to pursue employment discrimination claims. And what Judge Jolly, you said in that opinion, was that it was an abuse of discretion for the district court to dismiss the case without explaining why the less drastic alternative was appropriate. In our case, Judge Means did both things. He said the plaintiffs did not demonstrate a reasonable mistake, so he addressed that issue, and he made the decision that the defendant would be prejudiced. He made that conclusion. So unlike Weyberg, where the district court just didn't address that at all, it was addressed. On the first issue of reasonable mistake, wasn't the mistake even more unreasonable in Weyberg when the court had told him to sue in the estate's name? I understand the distinction. I think that the mistake that was made in Weyberg was a more reasonable mistake than it was here. Here you have they went to a court on their own without telling us. They went to a court and obtained an order saying that the court, that the bank is the guardian of the estate. The documents, if you look at 7170, says Plains Capital was appointed successor guardian of the estate for the sole purpose of pursuing litigation against Keller ISD. It wasn't a situation like in Weyberg where you have this agreement, this kind of settlement agreement, and then it's like, well, you know, we didn't dot our I's and cross our T's so well in the settlement agreement. And they say, I understand that's a mistake. And then Judge Olley said, well, district court, you've got to give me reasons why you're doing this. And so he was remanded for those reasons. Here we have the reasons. We have there was no understandable mistake here at all. Tell me why the suggestion that was made here about the possibility of a new trial, why wouldn't that have been a remedy here to say, okay, I mean, you've alleged the prejudice. You've satisfied the prejudice prong of the discovery violation, as it were. And what we're going to do is have a new trial. The proper plaintiff will be the trust. The family can join in, of course, if they wish, and try the case over in that kind of way to satisfy your allegations of prejudice. I'll tell you why. The answer to that is, number one, we hadn't gotten a judgment. So you don't move for a new trial until you have a judgment. So I wasn't going to ‑‑ if I wasn't successful, I would ask for a new trial and a motion for a new trial and then appeal on the merits. But also there is a remedy. They are proceeding right now in federal court in front of Judge ‑‑ not Means, but I'm sorry. McBride. McBride. And they're in front of Judge McBride on that very issue. The bank has brought the case. And they'll argue that the statute of limitations is told and they should be able to proceed forward. But that's not the same thing as a new trial in the same case, because you've got this limitations argument. Let me just ask you, because I know you're out of time, but I just want to ask you this. Would you concede that there is a difference between the sort of damages problem that was the result of not knowing more about the trust and what the trust held and the guardianship issue as to who should bring this case? Yes. Those are two different things. They are different, but they're related. Well, they're related only in the sense that it happens to be the same company. But if it had been a different bank that was the trustee, you wouldn't even have this argument about the damages at all. That would be a totally discovery argument. They are related, but they are interconnected. But I do think that you're right, Your Honor. The guardianship of the estate is a critical issue. And the question is, and we've cited the cases, if you have a guardian of the estate for the very purpose of bringing the litigation, then you've voluntarily given that capacity, that authority, that standing, whatever you want to call it, you've given that away to another entity. And then that means under Texas law you're divested of that ability to bring that claim. Okay. Thank you, Mr. Bratt. Mr. Gill, you've saved some time for rebuttal. Thank you, Your Honors. I want to address a couple issues raised. Can I just ask one thing really quickly? Before, if we were to reverse on the Rule 17 issue, should we nonetheless remand for consideration of discovery sanctions? Because to me that seems to be the bucket in which all of this falls, where the real harm perhaps lies. Your Honor, obviously a reversal and remand wouldn't preclude the district court from granting some discovery sanctions, from considering a future motion for a new trial. I'm not sure this court would necessarily need to instruct the district court as to whether or not it should or shouldn't give discovery sanctions so much as acknowledging that that was an available remedy. We have under the facts of this case to order the district court to grant a new trial. We can't reach out that far, can we, under the facts and law of this case? I'm not sure, Your Honor. And I'll confess to not having looked at specifically whether or not that remedy would be something this court could order. That would be the most equitable thing, or at least an equitable thing. I do think it's really important to address something that was raised by Mr. Branton, and I'm going to be charitable and assume he misspoke because he told this court that they did not receive a life care plan relating to Little T's condition prior to his coming to Keller ISD until after trial. And that was one of the documents that they discovered. That is plainly untrue. And if you look at Plaintiff's Exhibit 93, that is the life care plan he's talking about, and it was produced long before trial. When did he know about that? I believe it was produced a year before trial. A year before trial. Well, wouldn't Keller ISD have all this before there was ever any harm to Little T because of the whole IDEA Act area of the law where they have to help this young man who has these special needs? They've got to know about his issues, and so maybe they don't have everything, and this doesn't excuse any discovery violation, but they know about it. They know about all this stuff. Absolutely, Your Honor. Keller ISD has been sort of vague about what new facts they actually learned after the trial, and the only thing the judge found and the only thing that really is new is the existence of the guardianship, if we accept that they didn't know about that. And the existence of the guardianship has nothing to do with all the damages stuff we have. Absolutely, Your Honor. So the only prejudice there, it seems to me, is the improper prejudice of being able to use the bank and say, well, Little T shouldn't recover because he's got this big bank behind him rather than these poor little parents. That's correct, and, Your Honor, the district court seemed to rely on kind of the circular argument that the information that was deprived, what the district court held was that they were deprived of information about the relationship, not about Little T's condition, but about the relationship between Little T and Plains Capital Bank. That's really very circular because— One thing that does concern me, and that is that the district court, in all of the factual disputes that we're arguing about here, the district court did sit through the entire trial, understood it all, and then made suggestions about the fact that your motives may well have been improper. I mean, he saw the whole picture and came to that conclusion. I understand Your Honor's concern. I mean, that concerns me. I understand the court's concern, but it also appears that Judge Means applied the incorrect standard because his view of it was if there's some hint or suggestion that this was a tactic or strategic, that that takes Rule 17A3 off the table. This court hasn't specifically addressed that issue, but the Second Circuit has. And this is the advanced magnetics case cited in our brief. And the quote is, and in this case the Second Circuit reversed a similar decision to dismiss and refusal to allow substitution. The quote is, although the district court characterized AMI's assertion of the shareholder claims as tactical and strategic, those characterizations do not make Rule 17 inapplicable. You know, one question we haven't addressed here is the recovery of the parent's emotional damages under ADA that seems to be in question. Do you have anything you want to say about that? Yes, Your Honor. With the court's indulgence, since this is on rebuttal, the Rehabilitation Act's standing statute is incredibly broad. It applies to any aggrieved party. And the Second Circuit has held that extends to every person. Why should we not follow the Eleventh Circuit? Well, first of all, I think this case actually illustrates the real danger there and the Court's questions about ownership of the medical expense claims. And if Your Honor, if I may finish. You've got one minute to finish up, and I ask you a question. Why shouldn't we not follow the Eleventh Circuit? Your Honor, the Eleventh Circuit's reasoning creates several problems in that it ignores the plain language of the statute, which confers standing to any aggrieved party, which the Second Circuit has held applies, would allow parental standing under the Rehabilitation Act. And this case illustrates the problem with not giving that. Keller ISD's argument is that if the parents paid for the medical expenses, or if a trust paid the medical expenses, the claims belong to a trust. The Court has pointed out it may actually be the parents regardless. Keller ISD's position and the Eleventh Circuit's opinion would deprive anyone of the ability to bring that claim because that opinion would hold they cannot sue, they lack standing, because they were not individually discriminated against. In effect, it would deprive anyone— If they were denied a benefit under the Act itself, in other words, any cause of action they have must result from a denial of a benefit that the Act provides. That's right, a denial of a benefit to them. So it effectively would wipe out any ability to bring that type of claim. Thank you very much. Thank you, Your Honor. Yes, sir. Thank you. We'll call the next case of the day, and that's Pratt v. Smith.